# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nº 07-CV-1947 (JFB)
_____

LEPERRY FORE,

Petitioner,

VERSUS

ROBERT ERCOLE, SUPERINTENDENT, GREEN HAVEN
CORRECTIONAL FACILITY,

Respondent.

_____

**MEMORANDUM AND ORDER**
January 12, 2009
_____

JOSEPH F. BIANCO, District Judge:

LePerry Fore (hereinafter, "Fore" or "petitioner") petitions this Court for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, challenging his conviction in state court.

Petitioner was convicted in a judgment rendered on October 9, 2002, following a jury trial, in the Supreme Court of New York, Nassau County. Petitioner was convicted of Murder in the Second Degree (N.Y. Penal Law § 125.25[2]), Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03[2]), and Criminal Possession of a Weapon in the Third Degree (N.Y. Penal Law § 265.02[4]). He was sentenced to concurrent terms of imprisonment, the longest of which was an indeterminate term of twenty-two years to life.

Petitioner challenges his conviction on the following grounds: (1) the prosecution did not provide legally sufficient evidence to prove petitioner's guilt of a deliberate indifference murder beyond a reasonable doubt, thus denying him due process of law; (2) petitioner was denied effective assistance of appellate counsel, because his appellate counsel did not address the ineffective assistance of petitioner's trial counsel for failing to preserve the former issue.

For the reasons set forth below, petitioner's request for a writ of *habeas corpus* is denied in its entirety. First, his insufficiency of the evidence claim is procedurally barred from *habeas* review. Second, all of his claims, including the insufficiency claim, are without merit.

## I. BACKGROUND

### A. The Facts

The following facts are adduced from the instant petition and the underlying record.

#### 1. The Evidence at Trial

##### a. The Prosecution's Case

The prosecution's case consisted of petitioner's oral and written account following his arrest, as well as testimony by witnesses on the scene at the time of the incident and various medical and law enforcement personnel.[1]

Petitioner and Jeffrey Truesdale (hereinafter, "Truesdale" or "decedent") had been good friends for a number of years. (Tr. 190.) In April 2000, decedent asked petitioner to watch his two pit bull dogs because his mother, whom he lived with, was looking for a new place to live. (Tr. 191, 356.) One of decedent's dogs died in May 2000 from unknown causes and the second dog ("Bruno") died on June 19, 2000. (Tr. 342-43, 356-57.) Petitioner's dog was still alive. (*Id.*)

On the day Bruno died, petitioner put Bruno's body in a plastic bag in the backyard and drove to his friend Sumar Robinson's house later that day. (Tr. 342, 356-57.) Petitioner stayed at Robinson's house for a while but when he left the house, decedent pulled up in a white jeep and said that he wanted to see the body of his dog, Bruno. (Tr. 342-43, 357.) Petitioner got into decedent's jeep – the jeep was also occupied by a passenger named Hamilton Croft – and together the three of them drove back to petitioner's house to see the dead dog. (Tr. 343, 357.) Petitioner did not accompany decedent into the backyard to see Bruno's body and decedent returned to the front of the house, passed by petitioner without saying a word and drove off. (*Id.*) Petitioner then had to walk back to Robinson's house to get his car. (*Id.*) When petitioner got to his car, decedent pulled up to him and said "I should get a gun and shoot you and the stupid dog, your stupid dog," and then drove off. (*Id.*) Petitioner then got into his car and made a quick u-turn to drive home. (Tr. 343, 357-58.) After a short while, petitioner noticed decedent following him. (*Id.*)

Petitioner parked in front of his house and grabbed a black automatic handgun from under his seat. (Tr. 343, 358.) Petitioner's house is located on a residential street and at this time, residents were outside talking in groups. (Tr. 197, 223-24, 254.) Petitioner got out of his car and decedent pulled up next to him along the driver side door, partially blocking him from getting to his house. (Tr. 175, 198, 343, 358.) Petitioner looked in the open passenger side window, saw decedent "reaching for something," thought it was a gun, closed his eyes, "flinched," and fired three to four shots at decedent. (Tr. 343-44, 358.) Petitioner did not actually see a gun or

---

[1] "Tr." refers to the transcript of the trial proceedings in the underlying criminal action. "S." refers to the sentencing proceeding on December 11, 2002.

any other weapon, but thought decedent was reaching for a gun because he knew decedent had carried a gun in the past. (Tr. 344.)

No gun was found on decedent's person or in his jeep. (Tr. 371.) The prosecution offered two witnesses who testified that the jeep was parked for three to five minutes and they saw the petitioner exit the jeep after the shots were fired. (Tr. 222-24, 241, 246-50, 261.) Moreover, shell casings were found inside the jeep. (Tr. 199-202, 291-93.) On cross examination, one of the witnesses stated that he never actually saw the petitioner in the jeep, and the other offered conflicting testimony as to the description and actions of the petitioner after the shots were fired. (Tr. 241-42, 254-61.)

Petitioner did not check whether any of the shots had hit the decedent or if he was dead or alive; rather, he fled from the scene, running through his house, a park, and eventually to a relative's home in North Carolina. (Tr. 344-45, 358-59.) On May 23, 2001, petitioner was arrested in Newark, New Jersey. (Tr. 333-37, 359.)

The four shots fired by petitioner struck the decedent in both arms and his groin. (Tr. 323-31, 380-87.) One of the shots that hit the decedent in his upper right arm entered his chest, severed his spinal column, and paralyzed him from the waist down. (Tr. 330, 383-87.) Decedent was taken to the hospital where he remained in intensive care for a month before succumbing to his injuries. (Tr. 331, 391-92.)

### b. The Petitioner's Case

Petitioner presented a justification defense. The petitioner's case consisted of petitioner's testimony, as well as the testimony of his sister.

The major distinction between the petitioner's version of events and the prosecution's version was that petitioner argued that he was afraid for his life and was outside the vehicle when the shooting occurred.

Petitioner's sister testified that she was home when the shooting took place outside the house on June 19, 2000, and that she heard Truesdale threaten to kill the petitioner and then heard gunshots. (Tr. 419-20.) Petitioner testified that he was scared when decedent followed him home, that he parked his car and tried to get to his house, but was cut off by the decedent's vehicle, and thus was outside of the jeep when he fired the shots fearing for his life. (Tr. 456-60.) Petitioner also testified that he was afraid that decedent was going to shoot him and that is why he shot the decedent first, but he did not think decedent was going to die when he fired the shots, nor did he intend to kill him. (Tr. 456, 463-64.) On cross-examination, petitioner stated that he never tried to run to his house to get away from decedent and that he aimed in the direction of decedent when he fired the gun. (Tr. 490, 499.)

### 2. Motions

Upon completion of the People's case, petitioner's counsel moved for a trial order of dismissal on the ground that the People had not made out a *prima facie* case with respect to the counts in the indictment. (Tr. 415-16.) The court denied petitioner's application. (*Id.*) At the close of all the evidence, petitioner's counsel renewed his application for a trial order of dismissal. (Tr. 539-40.) Counsel argued that the People had failed to prove a *prima facie* case, and had failed to prove the case beyond a reasonable doubt. (*Id.*) The court again denied petitioner's

application. (*Id.*) Upon the jury finding petitioner guilty of all charges, petitioner's counsel made a motion to set aside the verdict as being against the weight of the evidence, which was also denied by the court. (Tr. 661.) On December 11, 2002, petitioner's counsel renewed his motion to set aside the verdict as being against the weight of the evidence, which was denied by the court. (S. 2-3).

### 3. The Verdict and Sentence

On October 9, 2002, following a jury trial, petitioner was convicted of one count of Murder in the Second Degree (N.Y. Penal Law § 125.25 (2)), one count of Criminal Possession of a Weapon in the Second Degree for a depraved indifference murder (N.Y. Penal Law § 265.03 (2)), and one count of Criminal Possession of a Weapon in the Third Degree (N.Y. Penal Law § 265.02 (4)). The trial judge sentenced petitioner to an indeterminate term of imprisonment of twenty-two years to life for Murder in the Second Degree. With respect to Criminal Possession of a Weapon in the Second Degree, petitioner was sentenced to a determinate sentence of fifteen years' imprisonment. Finally, with respect to Criminal Possession of a Weapon in the Third Degree, petitioner was sentenced to a determinate sentence of seven years' imprisonment. The trial judge ordered that all of the sentences were to run concurrently and further imposed a civil judgment against petitioner for restitution in the amount of $98,420.53, with a mandatory surcharge of $200, and a crime victims' assistance fee of $10.

### B. Procedural History

### 1. 2004 Motion to Vacate

On March 18, 2004, petitioner filed a *pro se* motion to vacate the judgment against him pursuant to N.Y. C.P.L.R. § 440.30, in which he alleged the following: (1) trial counsel was ineffective for: (a) his failure to cross examine petitioner about his knowledge of violent acts of the decedent; (b) his failure to ask for a continuance to properly investigate a witness; (c) his failure to request a missing witness charge; and (d) his failure to ask that prior grand jury testimony of unavailable witnesses be placed into evidence; (2) the prosecution suppressed favorable evidence in violation *Brady v. Maryland*, 363 U.S. 68 (1963); and (3) the trial court should have submitted Manslaughter as a lesser included offense. Petitioner's motion was denied on May 19, 2004.

### 2. 2005 Direct Appeal

On or about September 27, 2005, petitioner filed an appeal raising two claims: (1) the trial court had improperly precluded evidence regarding the decedent's reputation that was material to petitioner's justification defense; and (2) the court had incorrectly admitted a hearsay statement into evidence, in which the decedent accused petitioner of committing the crime. On or about February 10, 2006, defendant filed a *pro se* supplemental brief, in which he raised two claims: (1) his conviction for depraved indifference murder was based on legally insufficient evidence; and (2) his sentence is excessive.

On October 24, 2006, the Appellate Division unanimously affirmed the judgment

of conviction. The Appellate Division held that the evidence petitioner claimed the trial court had improperly precluded regarding the decedent was not material to his justification defense, that petitioner's legal sufficiency claim was unpreserved for review, that his sentence is not excessive, and that his contention as to the decedent's alleged hearsay statement did not require reversal. *People v. Fore*, 826 N.Y.S.2d 289 (N.Y. App. Div. 2006). On December 28, 2006, the New York Court of Appeals denied petitioner's application for leave to appeal. *People v. Fore*, 7 N.Y.3d 925 (N.Y. 2006).

### 3. 2006 Motion for Writ of Error *Coram Nobis*

While petitioner's application for leave to appeal was pending, on November 13, 2006, petitioner filed a *pro se* application for a writ of error *coram nobis* to obtain a new appeal on the ground that appellate counsel was ineffective because he failed to raise a claim that (according to petitioner) would have resulted in the reversal of his conviction. Specifically, petitioner contended that appellate counsel should have made a claim alleging ineffective assistance of trial counsel predicated upon trial counsel's failure to preserve defendant's legal insufficiency claim. On January 30, 2007, the Appellate Division, by decision and order, denied petitioner's error *coram nobis* petition, finding that petitioner "has failed to establish that he was denied the effective assistance of appellate counsel." *People v. Fore*, 827 N.Y.S.2d 670 (N.Y. App. Div. 2007) *(*citing *Jones v. Barnes*, 463 U.S. 745 (1983) and *People v. Stultz*, 2 N.Y.3d 277 (N.Y. 2004)). On April 20, 2007, the New York Court of Appeals denied petitioner's application for leave to appeal. *People v. Fore*, 8 N.Y.3d 945 (N.Y. 2007).

### C. The Instant Petition

On May 9, 2007, petitioner filed a *pro se* petition with this Court for a writ of *habeas corpus*, raising two of the claims that he had raised on his direct appeal and in his state court application for a writ of error *coram nobis*: (1) the prosecution did not provide legally sufficient evidence to prove petitioner's guilt beyond a reasonable doubt, thus denying him due process of law; and (2) he was denied effective assistance of appellate counsel because his appellate counsel did not address the ineffective assistance of petitioner's trial counsel for failing to preserve the former issue.

### II. STANDARD OF REVIEW

To determine whether petitioner is entitled to a writ of *habeas corpus*, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

(d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the

mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

III. DISCUSSION

A. Procedural Bar

A district court shall not review an application for a writ of *habeas corpus* unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254 (b)(1). The procedural bar rule in the review of applications for writs of *habeas corpus* is based on the comity and respect with which state judgments must be accorded. *House v. Bell*, 547 U.S. 518, 535 (2006). Respondent argues that petitioner's legal insufficiency claim was not properly preserved for appellate review in the state courts and, thus, petitioner's legal insufficiency claim is procedurally barred from *habeas* review. The legal insufficiency claim was raised on direct appeal, and the Appellate Division explicitly dismissed it as unpreserved under New York law. *People v. Fore*, 826 N.Y.S.2d 289 (App. Div. 2006).

Petitioner's federal claims may be procedurally barred from *habeas corpus* review if they were decided at the state level on adequate and independent procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729-33 (1991). The purpose of this rule is to maintain the delicate balance of federalism by retaining a state's rights to enforce its laws and to maintain its judicial procedures as it sees fit. *Id*. at 730-31.

The procedural bar applies when a state court's decision contains a "plain statement" that it is relying on an appropriate state law to deny a claim. *Michigan v. Long*, 463 U.S.

1032, 1042 (1983). The Supreme Court has consistently applied the *Long* rule since it was established. *See Harris v. Reed*, 489 U.S. 255, 261 (1989); *see also Ohio v. Robinette*, 516 U.S. 33 (1996); *Pennsylvania v. Labron*, 518 U.S. 938 (1996); *Arizona v. Evans*, 514 U.S. 1 (1995); *Coleman*, 501 U.S. at 729-32; *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986).

The rule applies to both substantive and procedural state laws. *See Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985) (applying the *Long* "plain statement" rule to a procedural state law). "[T]he state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." *Id*.

As to petitioner's claim that the evidence was legally insufficient to show guilt beyond a reasonable doubt, the Appellate Division stated that it was "unpreserved for appellate review." *Fore*, 826 N.Y.S.2d at 290 (N.Y. App. Div. 2006). To support this conclusion, the Appellate Division cited N.Y. Crim. Proc. Law § 470.05, which states, in relevant part, that:

> [f]or the purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered.

In New York, an objection to the legal sufficiency of the evidence takes the form of a motion to dismiss. *People v. Thomas*, 330 N.E.2d 609, 610 (N.Y. 1975). The motion must be made in order for an insufficient evidence claim to be preserved for review, *People v. Bynum*, 518 N.E.2d 4 (N.Y. 1987), and the motion must be made "at the close of

the People's case." *Thomas*, 330 N.E.2d N.Y.2d at 610.

At trial, petitioner's counsel moved for a trial order of dismissal upon completion of the People's case, on the ground that the People had not made out a *prima facie* case with respect to the counts in the indictment. (Tr. 415-16.) Petitioner argues that this is enough to preserve the legal insufficiency claim since it is similar to *People v. Feingold*, 7 N.Y.3d 288 (N.Y. 2006), and that the Appellate Division's decision to the contrary was simply "pretextual." (Petitioner's Memorandum of Law in Support of Petitioner's *Habeas Corpus* Petition, at 14-15). Petitioner is mistaken. In *Feingold*, the Court of Appeals found that the trial judge has specifically "confronted and resolved [the] issue," thus under the circumstances, the preservation was adequate. *Feingold*, 7 N.Y.3d at 290 (N.Y. 2006). Petitioner's record is devoid of any such instance in which the County Court specifically confronted or resolved the issue. Moreover, New York courts have consistently held that a general motion to dismiss is not sufficient to preserve the contention that the evidence at trial was insufficient to establish a specific element of the crime charged. *See People v. Gray*, 86 N.Y.2d 10, 20-22 (N.Y. 1995).

Once it is determined that a claim is procedurally barred under state rules, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Coleman*, 501 U.S. at 749-750 (citations omitted). A miscarriage of justice is demonstrated in extraordinary cases – for example, where a constitutional violation

results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 495 (1986).

Petitioner argues that assuming *arguendo* that this issue is procedurally defaulted, because appellate counsel was ineffective for failing to make an ineffective assistance of trial counsel argument, this constitutes "cause." Petitioner then cites *People v. Payne*, 3 N.Y.3d 266 (N.Y. 2004), *People v. Suarez*, 6 N.Y.3d 202 (N.Y. 2005), and *People v. Gonzalez*, 1 N.Y.3d 464 (N.Y. 2004), to demonstrate "prejudice." (Petitioner's Memorandum of Law in Support of Petitioner's *Habeas Corpus* Petition, at 13.) However, as discussed *infra*, the Court has fully considered and rejected petitioner's ineffective assistance of appellate counsel claim and likewise petitioner's "cause." Similarly, the Court also has fully analyzed the cited cases and rejected any "prejudice" as part of the ineffective assistance of appellate counsel claim.

Nor has petitioner demonstrated that a fundamental miscarriage of justice would occur if these claims were not reviewed by the *habeas* court. To the extent petitioner argues that a miscarriage of justice will result if his claim is not reviewed because he is actually innocent of depraved indifference murder, the Court rejects that argument and finds, as discussed in detail *infra*, that the evidence presented at trial clearly established petitioner's guilt beyond a reasonable doubt.

The Second Circuit addressed this precise issue in *King v. Artus*, No. 06-2820-pr, 2008 WL 41059, at *2 (2d Cir. Jan. 2, 2008) (summary order). In *King*, the petitioner shot and killed two women colleagues and contended in his *habeas* petition that there was legally insufficient evidence under New York law for him to have been convicted of depraved indifference murder, rather than intentional murder. The Second Circuit affirmed the district court's ruling that the insufficiency argument could not be considered on *habeas* review because trial counsel made only a general motion to dismiss and, thus, petitioner was procedurally barred from raising such claim in federal court:

> King argues that the only reasonable view of the evidence is that he intentionally killed his victims, and that there was therefore insufficient evidence to prove the mens rea of depraved indifference murder. We cannot address King's arguments because the state court procedural bar forecloses habeas review.
>
> In New York State, a defendant may not raise, for the first time on appeal, arguments concerning the legal sufficiency of the prosecution's evidence that were not raised with specificity in the trial court. King's trial counsel did not direct his motion to dismiss, or any other objection, specifically to the legal insufficiency of the evidence of depraved indifference murder.
>
> Since the New York State Supreme Court, Appellate Division has expressly relied on a procedural default as an independent and adequate state ground for its judgment, and King has not demonstrated cause for the default and actual prejudice as a result of the alleged violation of

federal law, or . . . that failure to consider the claim will result in a fundamental miscarriage of justice, federal habeas review is barred.

*King*, 2008 WL 41059, at *1-*2 (citations and quotations omitted); *see also Soto v. Conway*, 565 F. Supp. 2d 429, 436 (E.D.N.Y. 2008) (finding sufficiency of evidence claim involving conviction for depraved indifference murder was not properly preserved in state court and is procedurally barred on *habeas* review); *Alexander v. Graham*, No. 07-CV-59 (NG), 2008 WL 4239167, at *3-*4 (E.D.N.Y. Sept. 11, 2008) (finding sufficiency of evidence claim regarding depraved indifference murder to be procedurally defaulted where trial counsel failed to contemporaneously raise that claim at trial).

In sum, the issue of legal sufficiency of the evidence was unpreserved for appellate review under New York law, and petitioner's claim is procedurally barred from federal *habeas* review. In any event, assuming *arguendo* that this claim is reviewable, it is substantively without merit, as set forth below.

### B. Legal Insufficiency Claim

Petitioner claims that he was deprived of a fair trial and due process because there was insufficient evidence to prove his guilt beyond a reasonable doubt – specifically, that the evidence at trial was insufficient to support a finding of depraved indifference murder.[2]

The law governing *habeas* relief from a state conviction based on insufficiency of evidence is well established. A petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. *Einaugler v. Supreme Court of the State of N.Y.*, 109 F.3d 836, 840 (2d Cir. 1997). As such, a "state criminal conviction will be upheld if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vassell v. McGinnis*, No. 04-CV-0856 (JG), 2004 WL 3088666, at *5 (E.D.N.Y. Dec. 22, 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)); *see also Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial."); *Policano v. Herbert*, 430 F.3d 82, 86 (2d Cir. 2005) ("'[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2554[,] . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'") (quoting *Jackson*, 443 U.S. at 324). Even when "faced with a record of historical facts that supports conflicting inferences, [this Court] must presume – even if it does not affirmatively appear in the record

---

[2] As a threshold matter, the Court finds this claim to be procedurally barred from review, as discussed *supra*. However, in an abundance of caution, the Court will analyze the merits of this claim. Even assuming *arguendo* that this claim is reviewable, it is substantively without merit, as set forth below.

Although respondent did not take this position in its papers (*see* Respondent's Memorandum of Law, at 14), this Court believes that the Court's detailed analysis and conclusion on the merits are consistent with New York's case law for the reasons discussed *infra*.

– that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994). Thus, "[a] habeas court will not grant relief on a sufficiency claim unless the record is 'so totally devoid of evidentiary support that a due process issue is raised.'" *Sanford v. Burge*, 334 F. Supp. 2d 289, 303 (E.D.N.Y. 2004) (quoting *Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir. 1994)).

A *habeas* petitioner cannot prevail on a claim of legally insufficient evidence, unless he can show that viewing the evidence in the light most favorable to the prosecution, "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Flowers v. Fisher*, No. 06-5542-pr, 2008 U.S. App. LEXIS 22569, at *3 (2d Cir. Oct. 21, 2008) (quoting *Jackson*, 433 U.S. at 324). When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

New York depraved indifference murder law is defined as follows: "Under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person." N.Y. Penal Law § 125.25(2). "A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates

such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto." N.Y. Penal Law § 15.05(3).[3]

"[I]t has never been permissible in New York for a jury to convict a defendant of depraved indifference murder 'where the evidence produced at trial indicated that if the defendant committed the homicide at all, he committed it with the conscious objective of killing the victim.'" *Policano v. Herbert*, 507 F.3d 111, 114-115 (2d Cir. 2007) (quoting *Policano v. Herbert*, 7 N.Y.3d 588, 600 (N.Y. 2006) (explaining issues certified by the Second Circuit)).

Petitioner argues that the evidence at trial could only sustain a conviction for intentional murder, and therefore, was insufficient to establish depraved indifference murder. In support of his argument, petitioner relies on cases decided after his trial in 2002, which were part of the fundamental shift in New York's homicide jurisprudence in which defendants involved in one-on-one confrontations with victims could not be convicted of depraved indifference murder except in unusual circumstances. *See People v. Suarez*, 6 N.Y.3d 202, 208-09 (N.Y. 2005); *People v. Payne*, 3 N.Y.3d 266 (N.Y. 2004);

_____

[3] As one court has noted, when these statutes are read in conjunction with each other, "[t]he statutory standard for recklessness is higher for depraved indifference murder than for other reckless crimes. The depraved indifference murder statute requires that the risk created by a defendant's conduct be 'grave,' in addition to being substantial and unjustifiable." *Flowers v. Fisher*, No. 03 CV 5405 (NG) (VVP), 2006 WL 3050876, at *12 n.4 (E.D.N.Y. Oct. 23, 2006) (citations omitted), *aff'd*, 2008 WL 4643911 (2d Cir. Oct. 21, 2008) (summary order).

*People v. Gonzalez*, 1 N.Y.3d 464, 467 (N.Y. 2004); *People v. Hafeez*, 100 N.Y.2d 253, 258 (N.Y.2d 253 (N.Y. 2003). The evolution of New York law with respect to the depraved indifference statute is discussed in detail in *Rustici v. Philips*, 497 F. Supp. 2d 452, 483 (E.D.N.Y. 2007) and *Guzman v. Greene*, 425 F. Supp. 2d 298, 313 (E.D.N.Y. 2006), but a brief summary of the developments under New York law in connection with this statute is warranted.

a. New York's Depraved Indifference Statute

At the time of petitioner's trial in 2002, the law as stated in *People v. Register* and *People v. Sanchez* was controlling. *See Rustici*, 497 F. Supp. 2d at 483. Recklessness was the required mental state for depraved indifference murder and the depravity and indifference was assessed objectively based on a review of the circumstances of the crime. *See People v. Register*, 60 N.Y.2d 270, 273-75 (N.Y. 1983) (upholding conviction for depraved indifference murder where defendant entered a crowded bar with a pistol, drank for several hours stating that he was "'going to kill somebody tonight,' or similar words," then later shot at close range a person who had been arguing with his friend, shot a second person by mistake, and shot a third person for no explained reason), *overruled by People v. Feingold*, 7 N.Y.3d 288 (N.Y. 2006); *see also People v. Sanchez*, 98 N.Y.2d 373, 381-81 (N.Y. 2002) (upholding conviction for depraved indifference murder when defendant fired a gun pointed at the victim's chest from a distance of twelve to eighteen inches and then fled), *overruled by People v. Feingold*.

During this time of the *Register/Sanchez* line of cases, the New York Court of Appeals

held that it was not inappropriate for the trial court to let the jury decide whether defendants should be convicted of intentional or depraved indifference murder. *Sanchez*, 98 N.Y.2d at 384 (asking "whether, on this record, based on an objective assessment of the risk defendant recklessly created and disregarded, the likelihood of causing death from defendant's conduct was so obviously severe that it evinced a depraved indifference to human life"). The Court of Appeals reasoned that "purposeful homicide itself is the ultimate manifestation of indifference to the value of human life," and that the jury could "reasonably have concluded that defendant's conduct was either reckless and depraved, or intentional." *Id.* at 384, 386, 377-78 (noting that "the jury may also have taken into account the preexisting good relations between defendant and [the victim], and concluded that this was an instantaneous, impulsive shooting – perhaps to disable or frighten [the victim], rather than to kill him").

The Second Circuit has similarly found these cases during this time to stand for the proposition that "the evidence may be sufficient to support a conviction for depraved indifference murder if the jury could rationally infer that the defendant did not act with intent to kill the victim even if it might, on the same facts, properly conclude that the murder was intentional." *Policano*, 430 F.3d at 91.

However, there have been significant developments in New York regarding the law of depraved indifference murder and the legal sufficiency of evidence supporting such a claim since *Register* and *Sanchez*. *See Rustici v. Philips,* 497 F. Supp. 2d 452, 484-86 (E.D.N.Y. 2007) (discussing developments in New York law regarding the depraved indifference statute and sufficiency of

evidence); *see also Guzman v. Greene*, 425 F. Supp. 2d 298, 307-13 (E.D.N.Y. 2006) (same). In *Register*, the court held that recklessness is the mens rea for depraved indifference murder. *Register*, 60 N.Y.2d at 277. Beginning in 2003, however, several cases began restricting the circumstances under which a defendant could be found guilty of depraved indifference murder. *See e.g., People v. Suarez*, 6 N.Y.3d 2002 (N.Y. 2005); *People v. Gonzalez*, 1 N.Y.3d 464 (N.Y. 2004); *People v. Payne*, 3 N.Y.3d 266 (N.Y. 2004); *People v. Hafeez*, 100 N.Y.2d 253 (N.Y. 2003). Specifically, in *Suarez*, the Court of Appeals stated:

> [S]omeone who intends to cause serious physical injury does not commit depraved indifference murder because the intended victim dies. . . . Thus, one who acts with the conscious intent to cause serious injury, and who succeeds in doing so, is guilty only of manslaughter in the first degree. Otherwise, every intentional manslaughter would also establish depraved indifference murder – a result plainly at odds with the discrete classifications set forth in the statute. Since a defendant who intends to injure or kill a particular person cannot generally be said to be "indifferent" – depravedly or otherwise – to the fate of that person, we underscore what we said in Payne: *"a one-on-one shooting or knifing (or similar killing) can almost never qualify as depraved indifference murder."*

6 N.Y.3d at 211-12 (emphasis added).

Moreover, in 2006, the New York Court of Appeals in *People v. Feingold*, 7 N.Y.3d 288, 292 (N.Y. 2006) re-examined its depraved indifference jurisprudence and explicitly overruled *Sanchez* and *Register*. In doing so, the Court of Appeals held that depraved indifference is a culpable mental state. *Feingold*, 7 N.Y.3d at 294. Specifically, the Court of Appeals explained:

> We say today explicitly what the Court in *Suarez* stopped short of saying: depraved indifference to human life is a culpable mental state. Our dissenting colleagues contend that this final step in the overruling of *Register* is unwarranted and unnecessary. Perhaps we would agree with that were it not for the setting in which the present case comes to us. In earlier cases (*Hafeez, Gonzalez, Payne, Suarez*), we reversed depraved indifference murder convictions without having to discuss explicitly the question of mens rea. It was enough to say – and we said it repeatedly – that those defendants did not commit depraved indifference murder because depravity or indifference was lacking. . . . Beginning with *Hafeez*, the *Register/Sanchez* rationale was progressively weakened so that it would no longer support most depraved indifference murder convictions,

particularly one-on-one shootings or stabbings. . . . In *Suarez*, it was not necessary for us to state explictly whether depraved indifference is a mental state (mens rea). In the case before us, however, the trial judge rendered his verdict in a way that requires us to address directly the question of mens rea.

*Feingold,* 7 N.Y.3d at 294. Applying this *mens rea* requirement, the *Feingold* Court held that the conviction could not stand because the factfinder determined that the defendant did not act with depraved indifference. *Id.* at 295.

Thus, as the New York Court of Appeals explained in a subsequent decision in 2006, the interpretation of this element – namely, "under circumstances evincing a depraved indifference to human life" – of the depraved indifference murder statute "gradually and perceptibly changed from an objectively determined degree-of-risk standard (the *Register* formulation) to a mens rea, beginning with our decision in *Hafeez* in 2003, continuing in our decisions in *Gonzalez, Payne* and *Suarez* in 2004 and 2005, and ending with our decision in *Feingold* in 2006." *Policano*, 7 N.Y.3d at 602-03.

b. Application of New York's Depraved Indifference Statute to the Instant Case

With respect to petitioner's challenge in the instant case to the sufficiency of the evidence supporting the conviction for depraved indifference murder, this Court must look to New York law as it existed at the time petitioner's conviction became final. *See Flowers v. Fisher*, No. 06-5542-pr, 2008 U.S.

App. LEXIS 22569, at *3 (2d Cir. Oct. 21, 2008) ("We look to New York law as it existed at the time [petitioner's] conviction became final, as the New York Court of Appeals has found that although the law on depraved indifference has changed significantly in recent years, those changes do not apply retroactively.") (citing *Policano*, 859 N.E.2d at 495). The conviction becomes final 90 days after the New York Court of Appeals denied leave to appeal – that is, after the period during which a litigant can petition the United States Supreme Court for a writ of certiorari ends. *See Fernandez v. Artuz*, 402 F.3d 111, 112 (2d Cir. 2005). In the instant case, petitioner's conviction became final in 2007 (after all of the relevant changes to New York's law on deliberate indifference murders) and, thus, the sufficiency of the evidence must be examined by New York law at that time – as outlined by the New York Court of Appeals in *Feingold* and summarized in *Policano*.

Under the standard enunciated in *Feingold* and *Policano*, after a careful review of the record, this Court concludes that a rational factfinder, viewing the evidence in the light most favorable to the prosecution and drawing all permissible inferences in the prosecution's favor, could have found the elements of depraved indifference murder satisfied beyond a reasonable doubt. Specifically, in the instant case, petitioner testified at his trial that he believed that the victim was reaching for a gun and that petitioner then "flinched" firing multiple shots into the car without ever looking:

> Q.    Just show the jury what he did, if anything.

A.    He was sitting.  I seen him start to like reach down.  I assumed he was going for a gun.

Q.    Well, you didn't know if he had a gun, did you?

A.    No.

          *    *    *

Q.    After you saw him make that motion that you just portrayed for us, what did you do?

A.    I flinched.

Q.    What happened, if anything, after that?

A.    Well, I flinched and I fired off a couple of shots.

Q.    Where were you when you fired a couple of shots?

A.    Standing outside of the passenger side of the car.

Q.    Did you ever get into the white Jeep Cherokee?

A.    No.

Q.    Did you have occasion to lean in the window

somewhat when you fired these shots?

A.    I don't know.  Like I said, I flinched.  When I flinched, I like turned my head.  I never looked. I never looked.

Q.    Were you very close to that passenger door?

A.    Yes.

Tr. 459-60; *see also* Tr. 461 ("I never seen casings come out of no gun.  Like I said, I flinched.  When I flinched, I turned my head.  I didn't look.").  In fact, petitioner testified that he closed his eyes during the shooting (Tr. 497)[4] and had "no specific target" (Tr. 498), but rather aimed it in the direction of the victim, Mr. Truesdale.   (Tr.  498-99.) Petitioner further testified to the jury that he did not want to kill the victim and did not think he was seriously hurt:

Q.    You didn't attempt to change your name?

A.    No.  Like I told Mr. Walsh   earlier,   I thought everything was

_____

[4]  In his signed, post-arrest statement, which was read to the jury, petitioner also claimed that he closed his eyes.  (*See* Tr. 358.) ("When I got out of the car, I looked into True's passenger side open window and I saw him move his hand.  I closed my eyes and flinched.  I then fired between three and four shots at True.  I started to run toward my house and I threw the gun onto the street.")

14

going to be all right. I didn't really think he was seriously hurt. I didn't even think, you know, that he was going to die or anything like that. I just wanted to get everything time to calm down.

Q.   Did you want to kill him?

A.   No.

Tr. 463. Petitioner also testified that he ran from the scene of the shooting without providing any medical assistance to the victim, who was still alive, and petitioner eventually fled to North Carolina. (Tr. 461-62.)

Given the particular circumstances of this case, even under New York law in 2007 when petitioner's conviction became final, there was sufficient evidence, if the jury credited petitioner's version of events, to support a conviction for a depraved indifference murder. In other words, this is not a situation where the only conclusion reasonably supported by the trial is that the defendant intended to kill the victim. Instead, where the petitioner testified at the trial (contrary to the prosecution's contention) that he did not intend to kill the victim and spontaneously flinched when he saw the victim move his arm and fired multiple shots in the direction of the victim without looking, a jury could rationally conclude that the defendant acted not with an intent to cause death, but rather "recklessly engage[d] in conduct which create[d] a grave risk of death to another person, and thereby cause[d] the death of another person." N.Y. Penal Law §125.25(2). In addition, given the evidence that petitioner fired these multiple shots in the direction of the unarmed victim at very close range (hitting the victim in both arms and the groin) and then left the wounded victim alone in his car without assistance, the jury also could reasonably conclude that petitioner's conduct demonstrated a depraved indifference to human life.[5]

The Court recognizes that the fact that a defendant either fires multiple shots or fails to summon aid to the victim does not, in isolation, provide a sufficient basis under New York law to give rise to depraved indifference. *See, e.g., Suarez*, 6 N.Y.3d at 210 ("a killing (whether intentional or unintentional) is not transformed into depraved indifference murder simply because the killer does not summon aid for the victim"). However, here, it is the combination of petitioner's claim of an unintentional killing, in which he recklessly fired multiple shots in the direction of the victim, knew that he hit the victim with gunshots (although claiming he did not think

---

[5]   The Court notes that, although there were no individuals in the car with Mr. Truesdale or immediately adjacent to the car, there was testimony at the trial that there were three people talking in the street about three houses down at the time of the shooting. (Tr. 221-24.) In assessing the depravity of the entire situation, especially in light of the fact that petitioner testified that he jumped back from the victim's car and closed his eyes turning his head away when he fired the four shots (Tr. 456, 497), the jury could have also considered the danger posed by petitioner's conduct to these bystanders. *See People v. Payne*, 3 N.Y.3d 266 (N.Y. 2004) (noting cases where "a defendant lacking the intent to kill (but oblivious to the consequences and with depraved indifference to human life) shoots into a crowd *or otherwise endangers* innocent bystanders") (emphasis added).

he was seriously hurt), and left him alone in the car with such injuries while the petitioner fled.[6] Consistent with *Suarez* and its progeny, the evidence is this case was one of those "few rare circumstances" where, even though only a single person was endangered, a defendant could be convicted of depraved indifference murder because a jury could have rationally found, by accepting all or part of petitioner's trial testimony, that this was a situation where the "defendant intends neither to seriously injure, nor to kill, but nevertheless abandons a helpless and vulnerable victim in circumstances where the victim is highly likely to die" and, thus, "the defendant's utter callousness to the victim's mortal plight – arising from a situation created by the defendant – properly establishes depraved indifference murder."[7] *Suarez*, 6 N.Y.3d at 212.

This Court's conclusion that such factual circumstances are sufficient under New York law in 2007 (and currently) to support a depraved indifference conviction is supported by recent New York State cases that have reached a similar conclusion under analogous circumstances. For example, in *People v. Casiano*, 40 A.D.3d 528, 529 (N.Y. App. Div. 2007), defendant, while robbing a livery cab driver, pointed the gun at the driver and told the driver that she would shoot if he did not hand over the money. After the driver responded that the money was in the trunk, defendant warned him that she would shoot if he opened the door. *Id.* When the driver ignored that warning, defendant shot once, killing the driver. *Id.* The defendant argued on appeal that the jury's conviction for depraved indifference murder was insufficient. However, the Appellate Division, First Department, in addition to finding that the legal sufficiency argument was unpreserved, rejected the argument on the merits because "the jury could have reasonably concluded, particularly if it credited portions of defendant's statement, that she lacked homicidal intent but acted under circumstances evincing a depraved indifference to human life." *Id.* at 530; *see also People v. Patterson*, 38 A.D.3d 431, 432 (N.Y. App. Div. 2007) ("The evidence, including defendant's own trial testimony that he fired his weapon while looking away from the victim, supported the jury's finding that defendant recklessly engaged in conduct creating a grave risk of death to another person, under circumstances evincing depraved indifference to human life, rather than with specific intent to kill the victim.");

---

[6] Although petitioner claimed that as he ran through a house after the shooting he told his aunt that the victim needed to be taken to the hospital (Tr. 462), the jury could have rationally rejected that testimony or found it was sufficiently callous under all the circumstances to support a finding of depraved indifference in combination with the other evidence.

[7] The situation is also similar to other extraordinary cases, cited in *Suarez*, where "the evidence showed not just recklessness, but depraved indifference to human life. (*See e.g. People v. Roe*, 74 NY2d 20 (1989) [defendant fired at point-blank range without knowing whether the bullet was a 'live' or 'dummy' round])." *Suarez*, 6 N.Y.3d at 213. This Court does not see a meaningful legal distinction, for purposes of establishing deliberate indifference, between firing a gun at point-blank range, not knowing whether the bullet was live or dummy (as in *Roe*) and the situation here where defendant claimed to fire multiple shots without intent to kill in the general direction of the victim at point-blank range, without looking at all and without knowing

---

whether the victim had a gun.

16

*People v. McMillon*, 31 A.D.3d 136, 138 (N.Y. App. Div. 2006) (concluding that jury could reasonably find a killing was reckless where defendant told police that, although he shot the victim once in the chest from a distance of at least five feet, "he did not mean to kill or hurt anyone, that he had felt threatened and believed the victim was armed, that he intended only to scare the victim, and that his weapon had just gone off"); *People v. Suphal,* 14 Misc.3d 711, 715, 717 (N.Y. Sup. Ct. 2006) (where defendant testified that he shot at the victim with a gun defendant recovered from the victim because defendant believed the victim had a second gun, the court concluded, even after *Payne,* that "this is the rare case where a one-on-one murder could be found to qualify as a depraved indifference murder" because "there was a reasonable view of the evidence, based upon defendant's own testimony, upon which the jury could find that the defendant did not intend to hit or kill the decedent, but was merely trying to scare him off, albeit in an extremely reckless and depraved manner"); *see generally Maggiore v. United States,* No. 07-0551-PR, 2008 WL 5155366, at *3 (2d Cir. Dec. 9, 2008) ("But Maggiore has consistently denied any intent to murder, admitting only a reckless disregard for the serious risk to human life created by his actions. On this record, there is a factual basis to conclude that defendant acted under circumstances evincing a depraved indifference to human life, and his former counsel cannot be deemed to have rendered objectively unreasonable representation in failing to raise a sufficiency challenge to the guilty plea."); *People v. Castellano*, 41 A.D.3d 184, 185 (N.Y. App. Div. 2007) ("Under the evidence presented, the jury could have reasonably credited portions of defendant's testimony that supported a finding of reckless rather than intentional conduct, while at the same time rejecting his

justification defense."); *People v. Campbell,* 33 A.D.3d 716, 719 (N.Y. App. Div. 2006) ("A rational jury could reasonably conclude that the defendant did not care whether harm would result when he commenced his shooting spree in the direction of the three fleeing men, and that this act was not just reckless, but evinced a depraved indifference to human life.").[8]

---

[8] In *McMillon*, although finding that the verdict supported the jury finding that "the defendant acted, not with an intent to cause death, but recklessly with a conscious disregard of a substantial, unjustifiable, and grave risk that his act would result in death," the Appellate Division concluded that the evidence "did not establish the degree of depravity and indifference to human life required for depraved indifference murder." *Id.* at 142; *accord People v. Gilmore,* 41 A.D.3d 1162 (N.Y. App. Div. 2007); *People v. George,* 43 A.D.3d 560 (N.Y. App. Div. 2007). However, on that issue, *McMillon* is factually distinguishable from the instant case because it involved the firing of only *one shot* directly at the victim. *McMillon* 31 A.D.3d at 138. The other above-referenced cases, also involved only one shot. Here, as noted *supra*, the depravity element is supported by, among other things, the petitioner firing multiple shots at close range in the direction of the victim and then leaving the injured victim in the car without assistance. The Court recognizes that, under normal circumstances, firing more rounds would demonstrate more intentionality. *See People v. Payne,* 3 N.Y.3d 266, 272 (2004) ("it should be obvious that the more the defendant shoots (or stabs or bludgeons) the victim, the more clearly intentional is the homicide"). However, in the unusual circumstances here, where petitioner testified that his act was unintentional and he did not even look where he was firing with his eyes closed (and thus a finding of recklessness was reasonably supported by the evidence), the multiple shots do provide support for depravity in considering whether petitioner's version, if credited, demonstrated depraved indifference.

Petitioner relies on *Hafeez, Gonzalez, and Payne* – decided during his direct review – in arguing that his shooting constituted intentional murder, not depraved indifference. The Court disagrees, finding that the factual circumstances in those cases are distinguishable from the instant case.

In *People v. Hafeez*, the defendant was convicted of depraved indifference murder for aiding and abetting his co-defendant's revenge killing, where the co-defendant lured the victim into a bar and stabbed the victim in the chest. The Appellate Division reversed the conviction for depraved indifference murder, and the New York Court of Appeals affirmed such a reversal. In doing so, the Court of Appeals held:

> The trial evidence concerning codefendant's conduct was consistent with intentional murder as opposed to depraved indifference murder. Here, codefendant plotted his revenge for months in advance and effectuated his plan on the night of the stabbing by a scheme intended to place the victim in a position where he would be vulnerable to attack. Codefendant concealed a knife in his sleeve poised to slip into his hand. The plan culminated in a single deliberate wound to the chest that perforated the victim's heart. It was a quintessentially intentional attack directed solely at the victim.

*Hafeez*, 762 N.Y.S.2d at 575 (internal citation omitted). The Court of Appeals concluded that defendant's acts were not "imminently dangerous and [did not] present[] a very high risk of death to others." *Id.* The court contrasted the circumstances in *Hafeez* with *Sanchez*, finding that the defendant in *Sanchez* presented a heightened risk of unintended injury by firing in an area where children were playing. *Id.* The court concluded that "there exist[ed] no valid line of reasoning that could support a jury's conclusion that defendant possessed the mental culpability required for depraved indifference murder." *Id.*

Similarly, in *People v. Gonzales*, the New York Court of Appeals agreed with the Appellate Division's conclusion that "defendant was guilty of an intentional shooting or no other." 775 N.Y.S.2d 224, 226 (N.Y. 2004). The evidence at trial showed that defendant "shot the victim once in the chest, once in the face from 6 to 18 inches away, six times in the back of the head from approximately six inches away, and twice in the back." *Id.* The Court of Appeals concluded that "[t]he only reasonable view of the evidence here was that defendant intentionally killed the victim by aiming a gun directly at him and shooting him 10 times at close range, even after he had fallen to the

---

*See, e.g., Suphal*, 14 Misc.3d at 717 ("While in this case, the prosecution argued that firing so many shots at the decedent manifested an intent to kill, the jury could also reasonably find that, according to defendant's own testimony, the defendant did not intend harm, that he was merely trying to scare the deceased away and that he simply didn't care whether grievous harm resulted or not, signifying a depraved indifference to the risk of killing the decedent. Since the evidence in this particular and unusual case supported both interpretations, it was appropriate to submit the alternative theories to the jury.").

ground." *Id.* In defining depraved indifference murder, the court stated that "it involves a killing in which the defendant does not have a conscious objective to cause death but instead is recklessly indifferent, depravedly so, to whether death occurs. When defendant shot his victim at close range, he was not recklessly creating a grave risk of death, but was creating a virtual certainty of death born of an intent to kill." *Id.* at 227.

Finally, in *People v. Payne*, the defendant, angry after a phone confrontation with the victim, loaded a 12-gauge shotgun, went to the victim's home and shot him at point-blank range, killing him. 3 N.Y.3d 266, 269 (N.Y. 2004). The Court of Appeals, in reversing defendant's conviction for depraved indifference murder, analogized this case to *Gonzales*, concluding that "the evidence established defendant's intent to kill" rather than "[i]ndifference to the victim's life." *Id.* at 270.

These cases relied upon by petitioner clearly show that the New York Court of Appeals began limiting those circumstances under which a defendant could be charged with depraved indifference murder – specifically with respect to individual, one-on-one shootings or knifings. The Court recognizes that the instant case is not factually identical to the categories of depraved indifference situations discussed in *Gonzales* (and emphasized in *Payne*). *See Gonzales*, 775 N.Y.S.2d at 226-27 ("Depraved indifference murder is exemplified by a defendant – unconcerned with the consequences – who fires into a crowd; drives an automobile down a crowded sidewalk at high speed; shoots a partially loaded gun at a person's chest during a game of Russian roulette; abandons a helplessly intoxicated person on a snowy

highway at night; or repeatedly beats a young child over a period of several days.") (internal citations omitted); *see also Payne*, 3 N.Y.3d at 272 ("Instances [of depraved indifference murder] include where, without the intent to kill, the defendant inflicted a continuous beating on a three-year-old child, fractured the skull of a seven-week-old baby, repeatedly beat a nine year old or robbed an intoxicated victim and forced him out of a car on the side of a dark, remote, snowy road partially dressed and without shoes in subfreezing temperatures.") (internal citations omitted).

However, the evidence against petitioner in the instant case is clearly distinguishable from these cases where the Court of Appeals reversed convictions as part of New York's new depraved indifference rule because the court held that the "*only* reasonable view of the evidence here was that defendant intentionally killed the victim." *People v. Gonzalez*, 1 N.Y.3d at 467 (2004) (emphasis added); *see also People v. Payne*, 3 N.Y.3d at 270 (2004); *People v. Hafeez*, 100 N.Y.2d at 258 (2003). In the instant case, petitioner's evidence fits into the narrow category of cases where depraved indifference murder properly applies and, thus, petitioner's conviction would also be sustained under current law. As noted *supra*, petitioner presented evidence that he feared for his life and grabbed a gun after decedent threatened to shoot him for the death of his dog, and then followed him to his house. Moreover, there was evidence that petitioner got out of his vehicle, and when decedent cut him off, petitioner thought that decedent was reaching for a gun to follow through on his threats. According to petitioner, petitioner then shut his eyes, "flinched," and fired in the direction of decedent. Petitioner testified that he did not think decedent was going to die when he fired

the shots nor did he intend to kill him. Thus, in determining petitioner's state of mind, although there was certainly reason to believe the petitioner deliberately shot decedent, there was also considerable evidence to lead the jury to rationally believe that petitioner acted spontaneously and without intent out of fear, but still acted recklessly and with depravity. Such circumstances distinguish the instant situation from *Gonzalez, Hafeez,* and *Payne*. *See, e.g., People v. Suphal,* 14 Misc.3d 711, 715-17 (N.Y. Sup. 2006) (distinguishing *Payne* where defendant testified that he did not intend to kill victim and acted in self-defense in firing multiple shots). Viewing the issue in the light most favorable to the prosecution, the evidence at trial was legally sufficient to establish guilt of depraved indifference murder beyond a reasonable doubt even post-*Register/Sanchez* and under the standard articulated in *Feingold*. A rational jury could reasonably conclude that the petitioner's act, although not intentional based upon his own testimony, evinced a depraved indifference to human life when he shut his eyes, "flinched," and commenced his shooting spree in the direction of decedent.[9] *See, e.g., Salcedo v. Phillips*, No. 04 Civ. 7964

(PAC) (GWG), 2005 U.S. Dist. LEXIS 19808, at *59-*60, *89 (S.D.N.Y. Sept. 13, 2005) (finding evidence of depraved indifference to be legally sufficient where jury could infer from the quick sequence and the number of shots fired that petitioner intended only to commit serious physical injury or that he was firing indiscriminately to scare).

In sum, although the Court recognizes that the law regarding depraved indifference has evolved since petitioner's trial in 2002, the Court concludes that the evidence in this particular case was sufficient to sustain petitioner's conviction for depraved indifference under New York law at the time petitioner's conviction became final (and under current law). Therefore, assuming *arguendo* that the insufficiency claim is not procedurally barred from *habeas* review, the Court finds this is a remaining "rare case" under New York law where a one-on-one shooting could support a depraved indifference conviction.

## B. Ineffective Assistance of Appellate Counsel Claim

Petitioner also challenges his conviction on the ground that he was denied effective assistance of appellate counsel. Petitioner argues that trial counsel failed to raise the sufficiency of the evidence claim that (according to petitioner) would have resulted in the reversal of his conviction. Specifically, petitioner claims that because the evidence at trial clearly indicated that defendant's shooting was an intentional act, and trial counsel failed to move for dismissal on that ground, appellate counsel was ineffective for failing to make an ineffective assistance of trial counsel claim on appeal. For the reasons

---

[9]  The Court notes that, if the jury had completely rejected petitioner's testimony at trial, it also could have reasonably concluded that he acted intentionally. *See, e.g., People v. Price,* 35 A.D.3d 1230, 1231 (N.Y. App. Div. 2006) ("We thus conclude that, although defendant testified that he fired in self defense and shot with his eyes closed, 'there is a valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial,' i.e., that defendant intended to kill the vicitms.") (quotations and citation omitted). Thus, this is one of those rare situations, even under *Feingold*, where it was permissible to submit both the intentional murder charge and the depraved indifference charge to the jury.

set forth below, the Court disagrees and finds no basis for *habeas* relief on this ground.

A criminal defendant has the right to the effective assistance of counsel on the direct appeal of his conviction. *See Evitts v. Lucey*, 469 U.S. 387, 395-96 (1985). In determining whether appellate counsel has rendered constitutionally effective assistance, courts will apply the standard established in *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984), for analyzing such claims as to trial counsel. *See, e.g., Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citing *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992)). Under the *Strickland* standard, a petitioner alleging ineffective assistance of appellate counsel must prove both (1) that appellate counsel's performance was objectively unreasonable, and (2) that, absent counsel's deficient performance, there was a reasonable probability that petitioner's appeal would have been successful. *See Mayo*, 13 F.3d at 533-34; *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001). Generally, constitutionally effective counsel embraces a "wide range of professionally competent assistance," and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690).

Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983)); *see also Strickland*, 466 U.S at 690-91 (noting that appellate counsel's strategic choices with regard to which claims to bring on appeal are "virtually unchallengeable"). As the Supreme Court has noted, "[t]his process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting Jones, 463 U.S. at 751-52); *accord Sellan v. Kuhlman*, 261 F.3d 303, 317 (2d Cir. 2001). Thus, reviewing courts should not "second-guess" the reasonable professional judgments of appellate counsel as to the most promising appeal issues. *Jones*, 463 U.S. 754; *accord Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998). Instead, as the Second Circuit has observed:

> [T]he district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. Significant issues which could have been raised should then be compared to those which were raised. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.

*Mayo*, 13 F.3d at 533 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985))

The second prong focuses on prejudice to the defendant. The defendant is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Reasonable probability" means that the errors were of a magnitude such that it "undermines

confidence in the outcome." *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "[T]he question to be asked in assessing the prejudice from counsel's errors . . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695).

This Court proceeds to examine each prong in turn, keeping in mind that a *habeas* petitioner bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004). As set forth below, petitioner's claim fails to satisfy either element.

The Court finds that counsel's decision to omit a claim of ineffective trial counsel on appeal did not fall "outside the wide range of professionally competent assistance" and, therefore, cannot form the basis of a claim for ineffective appellate counsel under the Sixth Amendment. *Mayo*, 13 F.3d at 533. Moreover, petitioner cannot show under the standard set forth in *Strickland*, that appellate counsel's failure to raise the ineffective assistance of trial counsel claim was objectively unreasonable or that, if raised, there was a reasonable probability that his appeal would have been successful. For the reasons set forth below, this Court finds that petitioner's claim as to appellate counsel's ineffectiveness is without merit, and, thus, that the state court did not unreasonably apply federal law in rejecting petitioner's claim.

### 1. Deficient Performance Inquiry

As a threshold matter, the Court notes that petitioner's ineffective assistance of appellate counsel argument was rejected by the Appellate Division in petitioner's writ of error *coram nobis*. The Appellate Division, citing *Jones v. Barnes*, 463 U.S. 745 (1983) and *People v. Stultz*, 2 N.Y.3d 277 (N.Y. 2004), found that petitioner "failed to establish that he was denied the effective assistance of appellate counsel." *People v. Fore*, 36 A.D.3d 937, 937 (N.Y. App. Div. 2007). Thus, the claim is properly exhausted, but is without merit for the reasons discussed below.

The brief submitted by petitioner's appellate counsel to the Appellate Division was a well-reasoned, twenty-five page document, summarizing almost seven hundred pages of trial minutes, stressing the two points counsel apparently deemed most likely to succeed. Specifically, as noted *supra*, appellate counsel argued that (1) the trial court had improperly precluded evidence regarding the decedent's reputation for violence that was material to petitioner's justification defense; and (2) the court had incorrectly admitted a hearsay statement into evidence, in which the decedent accused petitioner of committing the crime. Both of these claims contained appropriate references to the record as well as extensive citations to applicable case law. Counsel then timely applied for leave to appeal to the Court of Appeals when the judgment was affirmed by the Appellate Division.

Nevertheless, petitioner argues that appellate counsel was ineffective because he failed to argue that trial counsel was ineffective in that he should have argued that the evidence was insufficient to establish depraved indifference murder. Thus, petitioner argues, the failure to preserve this issue rendered trial counsel ineffective and

similarly, appellate counsel's failure to raise this argument rendered him ineffective.

In attempting to meet the first prong of *Strickland*, petitioner must do more than show that his appellate counsel "omitted a nonfrivolous argument." *Mayo*, 13 F.3d at 533 (citing *Jones*, 463 U.S. at 754). Instead, petitioner must demonstrate that his appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Id.*

Petitioner argues that the legal insufficiency argument was significant because that the evidence at trial could have only sustained a conviction for intentional murder and was insufficient to establish depraved indifference murder. As support for his argument, petitioner relies on cases decided after his trial in 2002 (as discussed above), which were part of the fundamental shift in New York's homicide jurisprudence in which defendants involved in one-on-one confrontations with victims could not be convicted of depraved-indifference murder except in unusual circumstances. *See, e.g., People v. Payne,* 3 N.Y.3d 266 (N.Y. 2004); *People v. Hafeez,* 100 N.Y.2d 253 (N.Y. 2003); *People v. Gonzalez,* 1 N.Y.3d 464 (N.Y. 2004); *People v. Suarez,* 6 N.Y.3d 202 (N.Y. 2005).

Although this Court concluded that petitioner's sufficiency claim would fail even under these cases and under the law when petitioner's conviction became final, that determination is not necessary for petitioner's ineffective assistance claim. More specifically, in order for appellate counsel to have successfully argued that petitioner was denied effective assistance of trial counsel, petitioner would have had to show that trial counsel's failure to preserve the legal insufficiency claim

was outside the range of reasonable professional assistance "*viewed as of the time of counsel's conduct.*" *Strickland*, 466 U.S. at 690 (emphasis added); *see also Soto v. Conway,* 565 F. Supp. 2d 429, 436 (E.D.N.Y. 2008) ("in reviewing counsel's performance for cause, this Court considers not what the law of New York was or is, but rather whether, in light of the case law known to him at the time, counsel's conduct fell below an objective standard of reasonableness"). Thus, trial counsel's conduct would have to be measured as of 2002.

Under the legal framework in New York discussed in detail above, the evidence at trial was clearly sufficient for a rational jury to convict defendant under New York's depraved indifference murder statute at the time of trial in 2002. In fact, in July 2002, just four months prior to petitioner's trial in October 2002, the New York Court of Appeals decided *People v. Sanchez,* 98 N.Y.2d 373 (N.Y. 2002), and held that a jury could reasonably conclude that a one-on-one point-blank shooting supported a depraved indifference murder conviction. *See id.* at 378 ("accepting the jury's determination that the killing . . . was not intentional (*see supra*), defendant's shooting into the victim's torso at point-blank range presented such a transcendent risk of causing his death that it readily meets the level of manifested depravity needed to establish murder under Penal Law § 125.25(2)"). As the Court of Appeals later explained in *Policano,* in reviewing its prior jurisprudence:

> *Sanchez* epitomized our depraved indifference jurisprudence under the *Register* regime, the hallmarks of which – at least with respect to fatal one-on-one shootings

or knifings – were twofold. First, even though such an attack by its very nature presents compelling circumstantial evidence of intent to cause death, we considered the question of defendant's state of mind to be a classic matter for the jury. This strain of thought in our decisional law long predated *Register*. . . . Second, the factual setting in which the risk-creating conduct must occur, viewed objectively – *Register's* standard for determining whether there are circumstances evincing a depraved indifference to human life – was fulfilled if a defendant's actions, created an almost certain risk of death by, for example, shooting the victim in the head multiple times at close range.

7 N.Y.3d at 599-600. The Court of Appeals further explained:

> [U]nder *Register* – and until we started to recast "under circumstances evincing a depraved indifference to human life" post-*Sanchez* – where both intentional and depraved indifference murder were charged in one-on-one shootings or knifings, these counts were submitted to the jury for it to sort out the defendant's state of mind *unless there was absolutely no evidence whatsoever that the defendant might have acted unintentionally*. That a defendant's acts virtually guaranteed the victim's death did not, in and of itself, preclude a guilty verdict on a theory of depraved indifference. To the contrary and as the dissenters in both *Register* and *Sanchez* vociferously protested, under the *Register* formulation the very facts establishing a risk of death approaching certainty and thus presenting compelling circumstantial evidence of intent – for example, a point-blank shooting of the victim in the head – likewise demonstrated depraved indifference.

7 N.Y.3d at 600-01 (emphasis added); *see also Policano v. Herbert,* 507 F.3d 111, 114 (2d Cir. 2007) ("The formulation of the law established by *Register* 'remained static through [the Court's] decision in [*Sanchez*].' *Sanchez* therefore 'reaffirmed *Register*.'") (quoting *Policano,* 7. N.Y.3d at 595); *People v. Baptiste,* 51 A.D.3d 184, 193-94 (N.Y. App. Div. 2008) ("As noted above, *Sanchez* indicated that there was no requirement that the defendant's conduct indiscriminately endanger others, and explained that circumstances evincing a defendant's brutality and savagery were collateral and unnecessary . . . . In shifting its focus from recklessness and gravity of the risk to the existence of the specific factual circumstances deemed unnecessary in *Sanchez*, the decision in *Payne* represents the first instance in which the Court declined to treat the question of whether the defendant acted with a reckless state of mind

as a classic matter for the jury") (quotations and citations omitted).

Given the *Register/Sanchez* legal framework in New York at the time of petitioner's trial in 2002, trial counsel could have reasonably believed that it would have been utterly futile to argue that the evidence was insufficient to sustain depraved indifference murder, and counsel cannot be deemed incompetent for failing to predict that the New York Court of Appeals would later overrule *Sanchez* and *Register*. *See James v. Coughlin*, 22 F.3d 427, 429 (2d Cir. 1994); *see also Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) ("Counsel is not required to forecast changes in the governing law."); *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993) ("The Sixth Amendment does not require [appellate] counsel to forecast changes or advances in the law, or to press meritless arguments before a court."), *cert. denied*, 510 U.S. 852 (1993); *accord United States ex rel. Roche v. Scully*, 739 F.2d 739, 742-44 (2d Cir. 1984). Here, in light of petitioner's post-arrest statement and own testimony at trial that he did not intend to kill the victim, it would have been frivolous, and completely contrary to petitioner's evidence, to argue to the trial court on a legal insufficiency claim that there was no evidence that petitioner acted unintentionally.

Thus, trial counsel cannot be held to be ineffective when he reasonably relied on the interpretation of New York law regarding depraved indifference murder as it was at the time of petitioner's trial. Therefore, trial counsel's purported ineffectiveness was neither a significant nor obvious issue to appellate counsel and appellate counsel's decision to omit a claim of ineffective trial counsel on appeal did not fall "outside the wide range of professionally competent assistance."

*Strickland*, 466 U.S. at 690. Accordingly, appellate counsel's decision to pursue and focus on other issues, rather than those suggested by petitioner, hardly makes counsel's advocacy ineffective. *See Soto*, 565 F. Supp. 2d at 436 (in connection with New York's depraved indifference law, "[d]espite the changes that have occurred since [petitioner's trial in 2002], it is unlikely that trial counsel's failure to preserve this claim *at that time* would have constituted ineffective assistance. Because appellate counsel recognized as much in deciding not to raise such a claim, this Court cannot find her failure to make this challenge to constitute ineffective assistance of appellate counsel."); *see also Alexander v. Graham*, No. 07-CV-59 (NG), 2008 WL 4239167, at *6 (E.D.N.Y. Sept. 11, 2008) ("A rational trier of fact could have considered that Alexander had known Lee as his sister's boyfriend and father to his niece, and concluded that, during this dispute, Alexander was scared because he did not know if Lee intended to harm, and that, like the defendant in *Sanchez*, Alexander shot Lee in his upper chest rather than somewhere certain to cause death, intending to disable rather than kill him. . . . Thus, had Alexander's trial counsel objected to the sufficiency of the evidence of depraved indifference murder on the ground that the jury would be warranted only in finding intentional murder, such an objection would have been unsuccessful."); *Holley v. Phillips,* No. CV-03-1852 (DGT), 2008 WL 2938043, at *7 (E.D.N.Y. July 28, 2008) (sufficiency of evidence for depraved indifference murder established under *Sanchez* where petitioner shot victim multiple times at point blank range and, thus, petitioner's trial and appellate lawyers were not ineffective for failing to pursue such argument); *Farr v. Greiner*, No. 01-CR-6921 (NG) (MDG), No. 01-CV-6921

(NG) (MDG), 2007 WL 1094160, at *23-*24 (E.D.N.Y. April 10, 2007) (counsel not ineffective for failing to object to sufficiency of the evidence as to depraved indifference murder because the controlling law was *Register* and because "[t]he testimony was undisputed that 'Antoine' started the fight in the park, not petitioner, and that petitioner drew a gun only after Joseph started to 'make a move on' petitioner. Viewing the evidence in the light most favorable to the verdict, the jury may have determined that petitioner spontaneously shot Howard rather than acted with premeditation or with an intention to use the gun when he went to the park. . . . The jury could have also inferred that petitioner fired the gun to disable or frighten Howard, rather than to kill him.").

Moreover, an examination of the entire record also demonstrates the reasonableness of appellate counsel's decision not to pursue the issue of whether trial counsel was ineffective for failing to argue legal insufficiency. Trial counsel vigorously asserted petitioner's strategy of a justification defense and presented evidence that he feared for his life and acted spontaneously out of fear and that there was no premeditation. Trial counsel called petitioner and another witness to the stand to testify on petitioner's behalf that decedent had threatened petitioner prior to the shooting, and petitioner was able to present evidence as to his state of mind and his fear of the decedent at the time of the shooting. Moreover, trial counsel objected to the introduction of evidence and sought to introduce additional evidence with respect to the decedent's reputation for violence. Given petitioner's justification defense strategy, especially when combined with the state of depraved indifference law as noted *supra*, it was not objectively unreasonable of appellate counsel to focus the appellate brief on the

claim that the trial court had improperly precluded evidence regarding the decedent's reputation for violence that was material to petitioner's justification defense, rather than whether trial counsel was ineffective for failing to argue legal insufficiency.

Moreover, further examination reveals that, although trial counsel relied on the common interpretation of the law and failed to preserve petitioner's specific legal insufficiency claim, counsel moved for a trial order of dismissal upon completion of the People's case, on the ground that the People had not made out a *prima facie* case with respect to the counts in the indictment. (Tr. 415-16.) At the close of all the evidence, petitioner's counsel renewed his application for a trial order of dismissal. (Tr. 539-40.) In both instances, counsel argued that the People had failed to prove a *prima facie* case, and had failed to prove the case beyond a reasonable doubt. (*Id.*) Upon the jury finding petitioner guilty of all charges, petitioner's counsel made a motion to set aside the verdict as being against the weight of the evidence. (Tr. 661.) On December 11, 2002, petitioner's counsel renewed his motion to set aside the verdict as being against the weight of the evidence. (S. 2-3.) It is well established that in assessing the effective assistance of counsel, an attorney's performance is to be viewed "in totality and as of the time of the representation." *People v. Baldi*, 54 N.Y.2d 137, 147 (N.Y. 1981); *accord Strickland*, 466 U.S. at 690. Thus, when judged on "facts of the particular case, *viewed as of the time of counsel's conduct*," *Strickland*, 466 U.S. at 690. (emphasis added), trial counsel provided meaningful representation at all stages of the proceedings. *See Harris v. Artus,* No. CV-06-1337, 2008 WL 4360991, at *6 (E.D.N.Y. Sept. 22, 2008) ("even assuming *arguendo*,

that petitioner's depraved indifference/intentional murder claim was colorable during the pendency of his appeal, it was well within his appellate counsel's discretion to omit that weaker argument in favor of the stronger evidentiary claims.").

In sum, for the same reasons that it was not ineffective assistance of trial counsel to fail to raise legal insufficiency as a separate claim, it was not ineffective under the standard set forth in *Strickland* for appellate counsel to fail to raise ineffectiveness of trial counsel in purportedly failing to preserve the legal insufficiency claim. Accordingly, the Court finds that there were no "significant and obvious" issues regarding trial counsel's performance that should have been presented on appeal. Therefore, it was not objectively unreasonable for appellate counsel to omit an ineffective assistance of trial counsel claim from the direct appeal. Accordingly, this Court concludes the state court did not unreasonably apply federal law in failing to find petitioner's appellate counsel ineffective on this basis.

## 2. Prejudice Inquiry

Because the petitioner has failed to satisfy the first prong of the *Strickland* test, the Court need not discuss the second prong of *Strickland*. However, even assuming *arguendo* that appellate counsel's failure to argue that trial counsel was ineffective for failing to preserve the legal insufficiency claim was objectively unreasonable, a prisoner is not entitled to *habeas* relief unless he also demonstrates ensuing prejudice. *See Lynn v. Bliden*, 443 F.3d 238, 245 (2d Cir. 2006).

Here, petitioner has failed to show that there was a reasonable probability that his appeal would have been successful absent appellate counsel's alleged deficient performance. For the reasons discussed *supra*, there is no basis to conclude that the ineffective assistance of trial counsel claim would have succeeded, if raised. In any event, as discussed above, under current law, petitioner's evidence fits into the narrow category of cases where depraved indifference murder properly applies, and petitioner's evidence is clearly distinguishable from the cases the Court of Appeals reversed as part of New York's new depraved indifference rule. Thus, if the New York courts, at the time petitioner's direct appeal was decided in 2007, viewed the evidence in the light most favorable to the prosecution, *People v. Contes*, 60 N.Y.2d 620, 621 (N.Y. 1983), it would have concluded that it was legally sufficient to establish the petitioner's guilt of depraved indifference murder beyond a reasonable doubt because, as noted *supra*, a rational jury could reasonably conclude that the petitioner's act was not just reckless, but evinced a depraved indifference to human life when he shut his eyes, "flinched" and commenced his shooting spree in the direction of decedent. Thus, petitioner also fails to satisfy the "prejudice" prong in *Strickland*.

In short, petitioner cannot demonstrate that the state court's decision on this matter was contrary to, or an unreasonable application of Supreme Court precedent under *Strickland*. As a result, *habeas* relief is not available on this ground.

## IV. CONCLUSION

For the foregoing reasons, petitioner has demonstrated no basis for relief under 28 U.S.C. § 2254. Petitioner has failed to point to any state court ruling that was contrary to, or an unreasonable application of, clearly

established federal law, or that resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Accordingly, the instant *habeas* petition is denied. Because petitioner has failed to make a substantial showing a denial of a constitutional right, no certificate of appealability shall issue. See 28 U.S.C. § 2253(c)(2).

The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 12, 2009
Central Islip, New York

\* \* \*

Petitioner appears *pro se*. The attorney for respondent is Kathleen M. Rice, District Attorney of Nassau County, by Tammy J. Smiley, Esq., Judith R. Sternberg, Esq., Assistant District Attorneys, 262 Old Country Road, Mineola, New York 11501.